| United States District Court | Southern District of Texas |
|---|---|

United States District Court
Southern District of Texas
**ENTERED**
May 18, 2020
David J. Bradley, Clerk

CFM Interests, LTD., et al., §
　　　　　　　　　　　　　　§
　　　　　　Plaintiff, §
　　　　　　　　　　　　　　§
versus　　　　　　　　　　　§　　Civil Action H-12-02070
　　　　　　　　　　　　　　§
Aetna Health, Inc., et al., §
　　　　　　　　　　　　　　§
　　　　　　Defendants. §

# Opinion on Summary Judgment

1. *Introduction.*

CFM Interests, LTD., and CFM Emergency Care Specialist, P.A., treated patients insured by Aetna Health Inc. Aetna declined to pay CFM's invoices for facility fees because CFM's clinics were not licensed. CFM then contracted with a licensed hospital to use its credentials to bill its claims and sued Aetna in state court to recover denied payments. Aetna removed the case under the Employee Retirement Income Security Act. The parties moved for a summary judgment on liability and facility fees. Aetna will prevail.

2. *Background.*

CFM Emergency Care Specialists is an association of four doctors. Since 2006, CFM has operated a freestanding emergency room as Texas Emergency Care Center in Pearland, Texas. Although the State of Texas did not license freestanding emergency rooms until 2010, TECC and CFM's doctors billed Aetna with codes designated for licensed hospital-based emergency departments.

In 2007, Aetna caught wind that TECC was not licensed as a hospital-based emergency room. It flagged TECC's tax ID number and started denying TECC's claims. In 2008, CFM created another unlicensed TECC location in Cypress, Texas. It submitted the same sort of claims and used the same tax number as its predecessor. Aetna recognized the tax number and denied the Cypress TECC claims. Between January 2007 and August 2009, Aetna denied roughly 9,500 claims from TECC. Aetna told CFM that

the appropriate billing codes to use were those for urgent care, office based, or ancillary services. The reimbursements for those codes are lower than that of a licensed emergency room.

In August 2009, TECC entered a "Facilities Management Services Agreement" with First Street Hospital to submit its claims under First Street's name, provider number, and tax number. Whenever TECC or CFM's doctors treated a patient, the bills would show that the services were rendered at First Street Hospital. In return, First Street received 12% of the proceeds from each bill. The agreement ended when both TECC locations became licensed on August 24, 2010.

CFM sued Aetna in state court for its refusal to pay the facility fees it accrued before the agreement with First Street. The case was removed under ERISA and Aetna counter-sued for all the facility fees it paid before August 24, 2010.

3. *Preemption.*

This case is covered by ERISA. State-law claims are preempted by ERISA when they seek to recover benefits or to enforce rights arising under an employee benefit plan.[1]

CFM says ERISA does not apply because this dispute is about the rate of payment as opposed to the right to payment. It says that Aetna breached a provider agreement to cover at least 80% of the cost of its claims. According to CFM, when Aetna denied TECC's claims the heart of the matter was a disagreement about the rate of coverage it owed. By contrast, Aetna says that its denial of coverage was based on TECC not being licensed, a requirement of the plans.

An action for underpayment arising from a provider agreement is different from a coverage determination under the terms of a plan. Thus, disputes over the *rate of* payment rather than the *right to* payment are not preempted by ERISA.[2] Nonetheless, attempting to disguise an ERISA claim as a rate-of-payment dispute will not elude

---

[1] 29 U.S.C. § 1132(a)(1)(B).

[2] *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 530-31 (5th Cir. 2009).

preemption. A dispute is preempted by ERISA if there is a complete denial of coverage based on the rights and obligations established by an employee benefit plan.[3]

Aetna's insured assigned their plan benefits to TECC. The plans covered facility fees only if the insured was treated by a licensed hospital-based emergency room. So, TECC needed to be licensed for it to be reimbursed under the billing codes it submitted. Aetna denied TECC's claims when it discovered that TECC was not licensed. Since Aetna's denial of coverage arose from the rights and obligations of the plans, this case is within ERISA's reach.

4. *Facility Fees.*

In Texas, a provider can charge higher fees for some things if it is licensed and it is undisputed that neither TECC location became licensed until August 24, 2010. CFM says that it was a "comparable facility" to a hospital because TECC's operations were identical to one. For example, CFM analogizes TECC's high operating expenses, 24-hour operations, and specialized equipment with that of a licensed hospital. It says that the similarities of its operations entitles it to the same payment as a licensed hospital's emergency department.

CFM errs for three reasons. First, there is already an apparatus for determining whether a provider meets a generally accepted standard for reimbursement – the Texas Department of State Health Services. Listing the similarities between TECC's facilities and licensed emergency rooms shifts the responsibility of investigation and verification to insurers and the court; defeating the purpose of licensing in general. Second, the term "comparable facility" is a catchall for different types of *licensed* providers.[4] A carrier does not have to pay facility charges billed by a freestanding emergency center that is not licensed by the State. The Texas legislature did not authorize licensing for freestanding emergency medical care facilities until 2010. Because a carrier is not required to pay

---

[3] *Id.* at 532.

[4] *See Aetna Life Ins. Co. v. Cleveland Imaging & Surgical Hosp. LLC*, 2014 WL 12577612, at 1 (S.D. Tex. 2014); 28 TEX. ADMIN. CODE § 11.506(b)(9)(F)(i); TEX. INS. CODE ANN. § 843.002(9-b); *Healthcare Facilities Reg.*,TEXAS HEALTH AND HUMAN SERV., hhs.texas.gov/doing-business-hhs/provider-portals/health-care-facilities-regulation.

facility charges of an unlicensed clinic, Aetna does not have to pay for any facility fee of TECC that it accrued before it became licensed.

5. *Agreement with First Street Hospital.*

Clearly, the purpose of the agreement was to bill with a licensed hospital's name. CFM says that the agreement with First Street was an alliance to bolster their standing in the community, but that explanation is transparent. Although TECC billed its claims under First Street's name and number, the companies did not merge. They remained separate and distinct entities. They did not share employees, the same space, or patients. All managerial, operational, and financial responsibilities for TECC's facilities were handled by TECC despite billing under First Street's name.

Arrangements of this sort are just schemes to side-step requisite credentialing. It is hardly a coincidence that the agreement terminated the same month TECC secured its own license. Aetna is entitled to reimbursement for the facility fees it paid to First Street for services rendered at TECC while the agreement was in effect.

6. *Conclusion.*

This dispute is not about the rate of payment but about whether a healthcare provider's claims are entitled to payment under an employee benefit plan. For that reason, it is preempted by ERISA.

Aetna Health Inc., had no obligation to cover facility fees from CFM Interests, LTD., and CFM Emergency Care Specialist, P.A., because its clinics were not licensed by the State of Texas. CFM's use of First Street Hospital to submit facility charges was an illegitimate billing contract designed to circumvent its lack of credentials. Because the arrangement was a facade to cover fraud, Aetna is entitled to reimbursement for the facility fees submitted through it. Summary judgment will be granted for Aetna Health Inc.

Signed on May 18, 2020, at Houston, Texas.

Lynn N. Hughes
United States District Judge